# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| IN RE FITBIT, INC. STOCKHOLDER | ) | **Consolidated** |
| DERIVATIVE LITIGATION | ) | **C.A. No. 2017-0402-JRS** |

## ORDER REFUSING APPLICATION FOR CERTIFICATION OF INTERLOCUTORY APPEAL

WHEREAS, Plaintiffs filed a derivative complaint on behalf of Fitbit, Inc. alleging that certain members of the Fitbit board of directors and certain other Fitbit fiduciaries sold stock in Fitbit's initial and follow-on public offerings before negative news regarding the efficacy of one of Fitbit's key products was disclosed to the market, and that other directors allowed them to do so;

WHEREAS, the Court issued a Memorandum Opinion on December 14, 2018, in which it denied Defendants' motion to dismiss upon concluding that Plaintiffs alleged sufficient facts to plead with particularity that demand was excused under Court of Chancery Rule 23.1 with respect to Plaintiffs' insider trading and breach of fiduciary duty claims (the "Opinion")[1];

---

[1] *In re Fitbit, Inc. S'holder Deriv. Litig.*, 2018 WL 6587159 (Del. Ch. Dec. 14, 2018). Capitalized terms in this Order assume the same meaning as the Opinion unless otherwise defined.

1

WHEREAS, on December 24, 2018, nominal defendant, Fitbit, filed an application for certification of an interlocutory appeal of the Opinion (the "Application");

WHEREAS, the Application asserts three grounds for interlocutory appeal under Supreme Court Rule 42: (1) "the opinion conflicts with the decisions of the trial courts upon [a] question of law"—citing Supreme Court Rule 42(b)(iii)(B); (2) "the case involves a question of law resolved for the first time in this state"—citing Supreme Court Rule 42(b)(iii)(A); and (3) [r]eview of the interlocutory order may terminate the litigation"—citing Supreme Court Rule 42(b)(iii)(G);

WHEREAS, on January 7, 2019, Plaintiffs opposed the Application (the "Opposition"); and

WHEREAS, the Court having carefully considered the Application, Plaintiffs' response and the criteria set forth in Supreme Court Rule 42,

**IT IS HEREBY ORDERED**, this 14th day of January, 2019, that:

1.      Supreme Court Rule 42(b)(i) provides that "[n]o interlocutory appeal will be certified by the trial court or accepted by the Court unless the order of the trial court decides a substantial issue of material importance that merits appellate review before a final judgment."   Rule 42(b)(ii) provides that instances where the trial court certifies an interlocutory appeal "should be exceptional, not routine, because [interlocutory appeals] disrupt the normal procession of litigation, cause

2

delay, and can threaten to exhaust scarce party and judicial resources." For this reason, "parties should only ask for the right to seek interlocutory review if they believe in good faith that there are substantial benefits that will outweigh the certain costs that accompany an interlocutory appeal."[2]

2.      When certifying an interlocutory appeal, "the trial court should identify whether and why the likely benefits of interlocutory review outweigh the probable costs, such that interlocutory review is in the interests of justice. If the balance is uncertain, the trial court should refuse to certify the interlocutory appeal."[3]

3.      The Opinion does not decide a substantial issue of material importance that merits appellate review before a final judgment. Specifically, it does not conflict with existing jurisprudence or involve a substantial issue of first impression. Although review of the appeal could terminate the litigation, this alone is insufficient to warrant certification of the appeal. In light of these findings, I cannot say that the benefits of an interlocutory appeal outweigh the costs or serve considerations of justice. The Application's arguments to the contrary are rejected for the following reasons.

---

[2] Supr. Ct. R. 42(b)(ii).

[3] Supr. Ct. R. 42(b)(iii).

4.    *First*, the Opinion does not decide an issue that "relate[s] to the merits of the case."[4]   Indeed, I went out of my way to make clear that I was not making a final determination on the merits in denying Defendants' motion to dismiss. Rather, "given the serious nature of these claims," I "emphasize[d]" that I had determined only that "Plaintiffs have *alleged* facts that are adequate to survive dismissal given the liberal pleading stage inferences to which they are entitled. Whether they can *prove* these facts very much remains to be seen."[5]   The Supreme Court has found that interlocutory review is inappropriate where "no final determination was being made on the merits of plaintiff's claims, but only that plaintiff would be afforded the right to pursue discovery related to the allegations of the complaint."[6]   That is the case here.

5.    In making this determination, I acknowledge that an implicit risk of refusing to certify an appeal following the denial of a Rule 23.1 motion to dismiss is

---

[4] *Castaldo v. Pittsburgh-Des Moines Steel Co., Inc.*, 301 A.2d 87, 87 (Del. 1973) ("Generally speaking, the substantive element of the appealability of an interlocutory order must relate to the merits of the case . . . .").

[5] *Fitbit*, 2018 WL 6587159, at *1 n.2 (emphasis in original).

[6] *Fuqua Indus., Inc. v. Lewis*, 504 A.2d 571 (Del. 1986) (TABLE) (refusing interlocutory appeal).   *See also Musk v. Arkansas Teacher Ret. Sys.*, 184 A.3d 1292 (Del. 2018) (refusing interlocutory appeal where, on a motion to dismiss, the trial court determined that plaintiff had met its low burden of pleading facts that allowed a reasonable inference that the company's CEO was a controlling stockholder but also acknowledged that discovery might reveal otherwise).

that the Supreme Court may determine, well after the parties have engaged in expensive litigation efforts, that Plaintiffs should not have been granted standing to pursue their claims derivatively on behalf of the Company in the first place. Defendants focus on this risk in arguing that the denial of their motion to dismiss determines a substantial issue of material importance.[7] The logical extension of this argument, of course, is that a court decides a substantial issue of material importance, for purposes of Supreme Court Rule 42, every time the court determines that a plaintiff has met its burden to well-plead demand excusal, i.e., every time the court denies a Rule 23.1 motion to dismiss and thereby affirms the stockholder plaintiff's standing to take control of the litigation asset from the board and pursue claims derivatively on behalf of the corporation. That is not the law, nor should it be.[8] The decision to allow circumvention of the board's otherwise exclusive authority to pursue claims on behalf of the corporation is guided by settled standards

---

[7] Appl. ¶ 10.

[8] *See, e.g.*, *Silverberg v. Gold*, Del. Ch., C.A. No. 7646-VCP (Feb. 4, 2014), Letter Op. at 6 n.16 (not available on Westlaw) ("[I]t always is the case that when a trial court finds that demand is excused, an interlocutory review potentially could lead to termination of the litigation. There is nothing extraordinary or exceptional about the typical order excusing demand. Moreover, if [d]efendants are correct that the [o]pinion determined a substantial issue and established a legal right, then automatically giving meaningful weight to [Rule 42(b)(iii)(G)] would suggest that every demand excusal ruling would satisfy the requisite criteria of Rule 42 and be ripe for interlocutory review. Yet, such an outcome appears irreconcilable with precedent and the underlying logic and purpose of interlocutory review.").

of law and the trial court's assessment of the sufficiency of the pleadings. To allow automatic appeal of those determinations would ignore the exacting standards of Supreme Court Rule 42. Thus, while I have vested Plaintiffs with standing to pursue derivative claims because they carried their pleading burden under *Aronson* and *Rales*, that decision alone does not merit interlocutory appellate review.[9]

6. *Second*, the Opinion does not conflict with existing trial court decisions. The Application asserts that the Court erroneously inferred scienter on the part of outside directors Jonathan Callaghan, Steven Murray, and Christopher Paisley "based solely upon" the so-called "core operations doctrine,"[10] which some courts have held does not apply in the context of Rule 23.1's heightened pleading standard.[11] As emphasized in the Opinion, however, Plaintiffs well-pled that the products featuring the PurePulse™ technology accounted for 80% of Fitbit's

---

[9] Additionally, as Plaintiffs note in their Opposition, it appears that Defendants' Application concerns only Count II (the *Brophy* claim). Opp'n. 14 n.55. Thus, interlocutory appellate review at this stage would still leave Plaintiffs to prosecute Count I (the breach of fiduciary duty claim), not only failing to terminate the litigation but also defeating our Supreme Court's fully justified aversion to piecemeal litigation. *See E.I. du Pont de Nemours and Co. v. Allstate Ins. Co.*, 686 A.2d 1015, 1016 (Del. 1997) ("The goal, in all events, is to facilitate the orderly disposition of claims without inadvertently promoting a piecemeal approach to litigation").

[10] Appl. ¶ 16.

[11] Appl. ¶¶ 13, 16.

6

revenue.[12]  In other words, Plaintiffs alleged that the success or failure of PurePulse™ could make or break the Company.  These well-pled facts supported a more than reasonable inference that the Fitbit board of directors would have known when serious problems with the PurePulse™ technology, as alleged, began to emerge.

7.  This scenario is factually distinguishable from cases where plaintiffs have attempted to invoke the core operations doctrine as sole support for an inference of board-level knowledge.  In *Sandys*, for example, plaintiffs argued for an inference of knowledge based on "core financials fundamental to the business" but, importantly, did not allege that the financials revealed information that was potentially devastating to the company's future.[13]  In *Pfeiffer*, the court relied on the internal metrics of the company's performance as the "core operational information at issue" to infer that the board knew of the company's decline.[14]  Here, I did not grant a presumption based on red flags buried in Fitbit's financial

---

[12] *Fitbit*, 2018 WL 6587159, at *15.

[13] *Sandys v. Pincus*, 2016 WL 769999, at *17 (Del. Ch. Feb. 29, 2016), *rev'd on other grounds by Sandys v. Pincus*, 152 A.3d 124 (Del. 2016).

[14] *Pfeiffer v. Toll*, 989 A.2d 683, 694 (Del. Ch. 2010), *abrogated on other grounds by Kahn v. Kolberg Kravis Roberts & Co., L.P.*, 23 A.3d 831 (Del. 2011).

statements,[15] but rather accepted a reasonable inference based on well-pled facts, including that PurePulse™ is a bet-the-company kind of technology that the Fitbit board would have actively monitored as the technology either succeeded or failed.

8.    Moreover, there is no *per se* rule that a court cannot infer scienter based on the core operations doctrine when the presumption that flows from the doctrine is offered along with particularized factual allegations.[16]    Defendants do not disagree with this proposition.[17]    Nor do they disagree with the standard of law I applied in considering Plaintiffs' allegations.[18]    Instead, Defendants argue two points: (1) the complaint did not adequately allege the availability of reports, studies or analyses furnished to the Board, or Board meeting minutes that suggest access to

---

[15] Defendants also argue that the Court cannot infer scienter because the complaint does not allege that Fitbit's product issues impacted sales and the Section 220 documents show that Fitbit received relatively few complaints about heartrate monitors by the time of the IPO. Appl. ¶ 18.    As noted in the Opinion, those facts may well ultimately undermine Plaintiffs' effort to prove scienter.    At the pleadings stage, however, Plaintiffs pled enough to make scienter reasonably conceivable.

[16] *Fitbit*, 2018 WL 6587159, at *15 n.179.

[17] Appl. ¶ 13 ("[T]he Opinion frames its holding as relying not solely on the core operations inference, but also on 'well-pled facts' that 'management was keeping the Board apprised of the problems and efforts to address them' and on a federal court decision denying dismissal of a related securities class action") (citing Opinion 41–44).

[18] *See Roseton OL, LLC v. Dynegy Hldgs. Inc.*, 2011 WL 3420845, at 9 (Del. Ch. Aug. 4, 2011) (ORDER) ("Generally, for court decisions to be conflicting upon a question of law, they must disagree about legal standards.").

the alleged nonpublic information[19]; and (2) the Opinion inappropriately relied on a federal court decision denying dismissal of a related securities class action.[20]   But even if I incorrectly overlooked the absence of board-level "smoking gun" documents, and incorrectly considered the findings of a federal court that considered nearly identical factual allegations, those errors do not undermine the core factual allegations that animated my determination that Plaintiffs had adequately pled scienter: products featuring PurePulse™ accounted for 80% of Fitbit's revenue; the technology was not working; senior management and the Board knew the technology was not working before the trades at issue were consummated; and the market did not know of the problems with PurePulse™.[21]   In addition, as stated in the Opinion, Plaintiffs adequately alleged:

> Fitbit experienced serious problems with the technology early on, that Fitbit attempted to design fixes to the problems and those fixes were

---

[19] Appl. ¶ 14.

[20] Appl. ¶ 15. Even if Defendants disagree with the federal court's findings after its "holistic review" of the complaint, or this Court's reference to those findings in the Opinion, they do not and cannot question the Court's finding, based on the federal court's opinion, that the Company's election to move forward against Defendants on a *Brophy* claim in Delaware would have likely undermined the Defendants' defense in the Securities Action.   *Fitbit*, 2018 WL 6587159, at *16.

[21] *Cf. Sandys*, 2016 WL 769999 at *17 (rejecting an inference of scienter where "plaintiff's 'red flags' allegations against [defendants] boil down to [a conclusory] contention that they should have known trouble was afoot at the company merely because the Secondary Offering was proposed."); *Desimone v. Barrows*, 924 A.2d 908, 914 (Del. Ch. 2007) (finding that the complaint conceded that "much of [the] backdating operation was carried out by a single executive officer" and "was actively concealed from the board . . . .").

not working . . . and that, all the while, Fitbit was touting the promise and success of PurePulse™ to the market. These well-pled facts, combined with the nature, timing and size of the Offerings, adequately support a reasonable inference that the Selling Defendants sought to make trades based on nonpublic information.[22]

Finally, I found the Plaintiffs' allegations regarding the timing and selective waiver of the lock-ups,[23] and the Board's decision to lower Fitbit's allocation in the Offerings thereby ensuring that the overallotment was triggered and causing more of the Selling Defendants' shares to be sold in the Offerings, were also supportive of a reasonable inference of scienter.[24] Given my reliance on additional, particularly alleged facts, a pleading stage inference of scienter, even if that inference relied in part on the core operations doctrine, was appropriate.

9. *Third*, the Opinion did not address a novel question of law.[25] As required on a motion to dismiss, I accepted Plaintiffs' well-pled facts as true and drew reasonable inferences in Plaintiffs' favor. Since the pled facts are that two outside directors profited from the stock sales they executed through their associated

---

[22] *Fitbit*, 2018 WL 6587159, at *15 (internal citations omitted).

[23] *Id*. at *16.

[24] *Id*.

[25] Even if this case did present a question of law resolved for the first time, the Supreme Court has denied interlocutory appeals in favor of further discovery following trial court rulings on issues of first impression rather than taking the "hazardous" route of deciding "novel legal questions in the abstract." *TCV VI, L.P. v. TradingScreen Inc.*, 115 A.3d 1216 (Del. 2015).

investment funds (over which they exercised control), an inference that the directors could be liable on a *Brophy* claim is reasonable. If discovery reveals that the circumstances of these directors' relationships with their funds are more nuanced or different than those pled in the complaint, then Defendants will have their opportunity to present those facts to the Court on summary judgment and, if undisputed, Plaintiffs' *Brophy* claims against these directors may not pass through the summary judgment filter. Until then, I am satisfied that it is not particularly novel or controversial as a matter of Delaware law to declare that a fiduciary may not share inside information with a fund he controls so that the fund, in turn, can trade on that inside information as a means to avoid *Brophy* liability.[26] Surely Defendants are not sponsoring this kind of end-run around insider trading liability.

---

[26] Indeed, the Opinion cites to long-standing Supreme Court precedent, from which *Brophy* is derived, explaining that the public policy underlying a *Brophy* claim is to prevent unjust enrichment based on the misuse of confidential corporate information. *See Fitbit*, 2018 WL 6587159, at *13–14 (citing *Guth v. Loft*, 5 A.2d 503 (Del. 1939)). Courts have endorsed this precedent in subsequent holdings that articulate and apply the elements of a *Brophy* claim. *See, e.g.*, *Kahn v. Kolberg Kravis Roberts & Co., L.P.*, 23 A.3d 831, 840 (Del. 2011); *Thorpe v. CERBCO, Inc.*, 676 A.2d 436, 445 (Del. 1996) ("The strict imposition of penalties [for breach of fiduciary duty of loyalty] under Delaware law are designed to discourage disloyalty."). Relatedly, courts have shown no reluctance to impute a fiduciary's knowledge and actions to its affiliated entity in other contexts. *See, e.g.*, *In re PLX Tech. Inc. S'holder Litig.*, 2018 WL 5018535, at *49 (Del. Ch. Oct. 16, 2018) (holding that "[w]hen the fiduciary and primary wrongdoer is also a representative of the secondary actor who either controls the actor or who occupies a sufficiently high position that his knowledge is imputed to the secondary actor, then the test [for knowing participation in the aiding and abetting context] is easier to satisfy.").

11

My denial of Defendants' motion to dismiss recognizes that Plaintiffs have presented a well-pled complaint and allows the facts to play out. Plaintiffs have met their pleading burden, but if Defendants can demonstrate a distinction that would justify finding that the directors did not benefit from the trades, Plaintiffs' *Brophy* claim will fail.

10. Under these circumstances, I cannot certify that the likely benefits of interlocutory review outweigh the probable costs, such that interlocutory review is in the interests of justice. Defendants' application for certification of interlocutory appeal, therefore, must be **REFUSED**.


_/s/ Joseph R. Slights III_
Vice Chancellor